UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ALABAMA
MIDDLE DIVISION

**SHIRLEY KITELINGER,**
    Plaintiff,

v.

**CENLAR FSB *et al.*,**
    Defendants.

Case No. 4:24-cv-1399-CLM

## MEMORANDUM OPINION

Shirley Kitelinger sues Cenlar FSB, Citimortgage Inc., and Standard Guaranty Insurance Company. (Doc. 1-1, p. 55–80). In response, Cenlar and Citimortgage ("Defendants") ask the court to dismiss all claims pending against them except those for breach of contract. (Doc. 10). For the reasons explained below, the court **GRANTS IN PART AND DENIES IN PART** Defendants' motion.

## BACKGROUND

Because Kitelinger is defending against a motion to dismiss, the court takes her pleaded facts as true. *Crowder v. Delta Air Lines, Inc.,* 963 F.3d 1197, 1202 (11th Cir. 2020).

### 1. The Mortgage Agreement

Kitelinger and her late husband owned a home in Grant, Alabama. To buy the home, Kitelinger contracted with Citimortgage as the mortgagor and Cenlar to service the loan. It's unclear if Kitelinger signed two contracts or if she signed one contract with both Defendants. Regardless, all parties agree that Defendants were contractually entitled to protect their security interests by insuring the home at Kitelinger's expense.

### 2. The Insurance Contract

In April 2022, Defendants exercised their right to insure Kitelinger's home with a Standard Guaranty Insurance policy. (Doc. 1-1, p. 56). The policy's coverage limit—$110, 487.00 with a $2,000 fire damage deductible—covered the value of Kitelinger's home. Kitelinger does not specify (and Defendants don't clarify) which parties contracted with Standard. (*Id.*, p. 75) ("[T]he Plaintiff and Standard Guaranty contracted . . . to have Standard Guaranty insure a single-family residence for Plaintiff."); (*id.*, p. 56) ("Citimortgage and/or Cenlar obtained [] forced placed insurance coverage, through Standard Guaranty.").

### 3. The Fire

Kitelinger's husband died two months later. Three months after that (September 2022), a fire destroyed Kitelinger's home, taking all of Kitelinger's copies of the home-related documents with it. Even so, Kitelinger filed a claim. According to Kitelinger, she "filed all appropriate documents with Citimortgage and/or CENLAR and/or Standard Guaranty to assert and/or sustain her insurance claims." (*Id.*, p. 57).

Kitelinger alleges that Standard Guaranty issued a claim payment to one of the Defendants, but Kitelinger does not know which one. Standard Guaranty claimed recoverable depreciation of $73,463.24, about two-thirds of the total policy limit. No one has paid Kitelinger this $73,463.24—meaning that Kitelinger has yet to receive the full amount of the policy, even though Standard Guaranty valued the property at more than the policy limit of $110,487.00.

Kitelinger alleges that Defendants refused to release the payment because Kitelinger never submitted the required "Repair Affidavit." (*Id.*, p. 58). Kitelinger argues that such an affidavit wasn't required, but even if it was, Defendants knew "there was nothing left of the residence to repair." (*Id.*). Kitelinger eventually went into foreclosure, a result she could have avoided if Defendants had paid her in full.

### 4. The Lawsuit

Kitelinger sued Defendants in state court (doc. 1-1), and Defendants removed the case here (doc. 1). Kitelinger's complaint pleads 16 counts:

- **Count 1:** Wantonness against Cenlar
- **Count 2:** Breach of Contract against Cenlar
- **Count 3:** Misrepresentation against Cenlar
- **Count 4:** Bad Faith against Cenlar
- **Count 5:** Unjust Enrichment against Cenlar
- **Count 6:** Conversion against Cenlar
- **Count 7:** Wantonness against Citimortgage
- **Count 8:** Breach of Contract against Citimortgage
- **Count 9:** Misrepresentation against Citimortgage
- **Count 10:** Bad Faith against Citimortgage
- **Count 11:** Unjust Enrichment against Citimortgage
- **Count 12:** Conversion against Citimortgage
- **Count 13:** Wantonness against Standard Guaranty
- **Count 14:** Breach of contract against Standard Guaranty
- **Count 15:** Misrepresentation against Standard Guaranty
- **Count 16:** Bad Faith against Standard Guaranty

(Doc. 1-1). Standard Guaranty answered Kitelinger's complaint. (Doc. 8). Cenlar and Citimortgage move to dismiss the claims highlighted in yellow. (Doc. 10).

## STANDARD

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* But those "[f]actual allegations must be enough

to raise a right to relief above the speculative level." *Twombly,* 550 U.S. at 555.

## ANALYSIS

Cenlar and Citimortgage do not seek dismissal of the breach of contract claims against them (Counts 2 and 8). The court will evaluate their motion to dismiss all other claims in the order pleaded.

### A. Counts 1 & 7: Wantonness

Kitelinger alleges state-law wantonness because, she says, Cenlar and Citimortgage "blatantly ignored clear and convincing evidence of extensive damage to the Plaintiff's residence, making it unrepairable, while simultaneously demanding proof of repair before releasing monies owed to the Plaintiff." (Doc. 1-1, p. 61, 68–69). Defendants argue this theory is not recognized under Alabama law: "there is no question that these claims call into question the servicing of Plaintiff's loan, and as such, they must fail because Alabama law does not recognize a cause of action for wanton loan servicing." (Doc. 10, p. 3). Defendants are correct.

The Alabama Supreme Court has said:

> "The proper avenue for seeking redress when contractual duties are breached is a breach-of-contract claim, not a wantonness claim . . . Following this principle, federal courts applying Alabama law have repeatedly rejected attempts to assert wantonness claims based on a lender's actions handling and servicing a mortgage once the mortgage is executed."

*U.S. Bank. Nat. Ass'n v. Shepherd*, 202 So. 3d 302, 314 (Ala. 2015). In her response to Defendants' motion, Kitelinger admits that she challenges Defendants' "wrongful actions and/or omissions *while performing under mortgage contract and forced placed insurance plan* . . . ." (Doc. 14, p. 5) (emphasis added). So under Alabama law; the proper remedy is breach of contract, not wantonness. *See Shepherd, supra.*

4

As a result, the court **DISMISSES WITH PREJUDICE** Counts 1 and 7 because they plead a claim that is not recognized under Alabama law and re-pleading that claim would be futile.

### B. Counts 3 & 9: Misrepresentation

Kitelinger alleges that Defendants "represented" they would use the insurance policy "to insure her residence, as well as the[ir] security interest[.]" (Doc. 1-1, pp. 63–64, 70–71). Kitelinger alleges this "representation" amounts to a misrepresentation because Defendants ultimately withheld payment. (*Id.*). Kitelinger argues that Defendants intentionally mislead her to induce her payment for the policy. (*Id.*).

Defendants argue, and the court agrees, that Kitelinger's pleading of a generic "representation" fails to satisfy the high pleading standard of particularity required for misrepresentation. (Doc. 10, p. 6). Rule 9(b) requires plaintiffs plead fraud with "particularity" and "allege the details of the defendants allegedly fraudulent acts, when they occurred, and who engaged in them." *Sooper v. Blue Cross and Blue Shield of Florida, Inc.*, 19 F.3d 562, 568 (11th Cir. 1994); Fed. R. Civ. Pro. 9(b). Kitelinger fails to include any details of the "representation" in her complaint. Kitelinger's pleading doesn't contain any language from the mortgage agreement or insurance policy requiring Defendants use the claim payment to protect her property interest *as well as* their security interest. If instead Kitelinger's understanding stemmed from an oral agreement, her pleading is equally scant. Kitelinger doesn't specify who from Cenlar or Citimortgage made the alleged misrepresentation, when it was made, or what specifically was said or promised.

Because Kitelinger doesn't include enough details to meet the heightened pleading standard of Rule 9(b), the court **GRANTS** Defendants' motion to dismiss Counts 3 and 9. Because this deficiency could be corrected, this dismissal is **WITHOUT PREJUDICE**. If Kitelinger chooses to replead Counts 3 and 9, she needs to address the particularity requirements discussed above.

5

### C. Counts 4 & 10: Bad Faith

As for bad faith, Kitelinger alleges that Defendants "failed to use or give any insurance payouts to the Plaintiff, despite her contractual and/or equitable right to the same." (Doc. 1-1, p. 65, 72). Defendants argue bad faith cannot stand because Kitelinger fails to plead facts that would prove they had an "insurer-insured relationship" with Kitelinger. (Doc. 10, p. 7).

The court agrees. Alabama law requires the existence of an insurance contract to sustain a bad faith claim for failure to pay insurance proceeds. *Jones v. Alfa Mut. Ins.*, 1 So. 3d 23, 32 (Ala. 2008). Kitelinger pleads no facts that would show Defendants agreed to act as her insurer. Kitelinger never explains who, what, when, where, or how Defendants indicated they would insure her property interest. In fact, Kitelinger pleaded that she and "Standard Guaranty contracted . . . to have Standard Guaranty insure a single family residence for Plaintiff." (Doc. 1-1, p. 56). Kitelinger's insurer appears to be Standard, not Cenlar or Citimortgage.

Because Counts Four and Ten do not state a plausible claim for relief, the court **DISMISSES** both counts **WITHOUT PREJUDICE.** The court's dismissal is without prejudice because Kitelinger could state a plausible claim of bad faith against Cenlar and Citimortgage in two ways:

1. <u>Contract Specifics</u>: Kitelinger pleaded that she and Standard had an insurance contract and that "Citimortgage and/or Cenlar obtained [] forced placed insurance coverage, through Standard Guaranty." (Doc. 1-1, p. 56, 75). Kitelinger's pleading may imply that Citimortgage and Cenlar were also parties to her insurance contract with Standard. Kitelinger, however, fails to plead any language from that contract or her mortgage agreement with Defendants. Kitelinger *may* be able to state a claim of bad faith if she pleads facts that would prove Defendants were contractually required to insure the property for her benefit.

2. <u>Third-party Beneficiary</u>: Kitelinger may also proceed on a theory of bad faith if she establishes that Standard contracted solely with Defendants, and she was a third-party beneficiary to that contract. *See*

6

*e.g.*, *Ex parte Dyess*, 709 So. 2d 447 (Ala. 1997). Kitelinger doesn't plead bad faith on a third-party beneficiary theory and instead argues that Defendants' refusal to pay breached the duty of good faith found in the "agreement(s) of the parties." (Doc. 1-1, p. 65, 72). As already explained, Kitelinger never specifies *who* contracted with Standard or *what* that contract entailed. So both bad faith claims fail as currently pleaded.

### D. Counts 5 & 11: Unjust Enrichment

Kitelinger alleges that Defendants were unjustly enriched by retaining the insurance claim payment. (*Id.*, p. 66, 73). In response, Defendants argue that the mortgage agreement (*e.g.*, an express contract) precludes a claim for unjust enrichment. (Doc. 10, p. 8). The court disagrees.

"To prevail on a claim of unjust enrichment under Alabama law, a plaintiff must show that: (1) the defendant knowingly accepted and retained a benefit, (2) provided by another, (3) who has a reasonable expectation of compensation." *Portofino Seaport Village, LLC v. Welch*, 4 So. 3d 1095, 1098 (Ala. 2008). Kitelinger sufficiently alleges each element of unjust enrichment. Accepting her facts as true, Kitelinger pleaded that (1) Defendants accepted monthly payments for the Standard insurance policy, (2) from Kitelinger, (3) who believed her payments guaranteed the policy would cover her property interest.

Under Rule 8, parties may plead in the alternative. Fed. R. Civ. Pro. 8. At this stage in litigation, the court **DENIES** Defendants' motion to dismiss Counts 5 and 11 and will allow Kitelinger to proceed on both breach of contract and unjust enrichment. The court cautions Kitelinger that, as Defendants rightly state, claims for breach of an express contract and unjust enrichment can't coexist on the merits. *See McCaughey v. Bank of Am., N.A.*, 249 Fed.Appx. 794, 798 (11th Cir. 2008); *Flying J Fish Farm v. Peoples Bank of Greensboro*, 12 So. 3d 1185, 1193 (Ala. 2008); *Mantiply v. Mantiply*, 951 So. 2d 638, 654 (Ala. 2006). Kitelinger needs to choose with which theory she wishes to proceed.

### E. Counts 6 & 12: Conversion

Finally, Kitelinger alleges that Defendants "intentionally and wrongfully withheld insurance claim funds rightfully belonging to" her. (Doc. 1-1, p, 67, 74). In response, Defendants ask the court to dismiss because "the funds do not constitute 'specific money capable of identification.'" (Doc. 10, p. 12). The court agrees with Defendants.

"The Alabama Supreme Court has repeatedly held that an action for the conversion of money is improper unless there is earmarked money or specific money capable of identification. . . . Money is specific and capable of identification where, for example, it is 'money in a bag, coins or notes that have been entrusted to the defendant's care, or funds that have otherwise been sequestered, and where there is an obligation to keep intact and deliver this specific money *rather than to merely deliver a certain sum*. . . . an action for the conversion of money requires the money itself, not just the amount of it, to be specific and capable of identification." *Edwards v. Prime, Inc.*, 602 F.3d 1276, 1303-04 (11th Cir. 2012).

Kitelinger fails to show how the "claim payment," (doc. 1-1, p. 57), Defendants received from Standard is identifiable. Kitelinger doesn't specify how or in what form Standard transferred the payment to Defendants (*e.g.*, bills, wire transfer, check, etc.). Kitelinger also fails to explain how Defendants held the payment since receiving it. For instance, did Citimortgage or Cenlar hold the funds in an account registered to it individually, or were the funds held in a joint account registered to both Defendants?

Because of Kitelinger's vague pleading, the court **DISMISSES WITHOUT PREJUDICE** Counts 6 and 12. If Kitelinger can show Defendants held the insurance payment in a designated, non-commingled account, there's a chance she can establish conversion. If Kitelinger chooses to replead conversion, she must establish her entitlement to the *specific* bills (or e-currency) Standard transferred to Defendants. Establishing Kitelinger's entitlement to a certain sum representing Standard's payment isn't enough to plausibly allege conversion.

## CONCLUSION

As explained, Kitelinger may proceed on Counts 5 and 11 as pleaded; the court **DISMISSES WITH PREJUDICE** Counts 1 and 7; and the court **DISMISSES WITHOUT PREJUDICE** Counts 3, 4, 6, 9, 10, and 12. The court will grant Kitelinger one chance to replead her complaint and cure the highlighted deficiencies. Kitelinger's amended complaint, if any, is due on or before **September 12, 2025**. All other deadlines are governed by the court's amended scheduling order. (Doc. 21).

**Done** and **Ordered** on August 29, 2025.

_____
**COREY L. MAZE**
UNITED STATES DISTRICT JUDGE